UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EUGENE LIBBETT,

                      Plaintiff,

                                                                                             DECISION AND ORDER

                                                                                           07-CV-6459L

           v.

PHYSICIAN ASSISTANT DOODY,
et al.,

                      Defendants.
_____

       Plaintiff, Eugene Libbett, appearing *pro se*, commenced this action on September 20, 2007. At the time of the commencement of this action, Libbett was serving a 110-month sentence imposed by this Court on several firearms and narcotics charges to which Libbett had pleaded guilty in September 2006. His complaint asserted a variety of claims under 42 U.S.C. § 1983, against a number of defendants, arising out of certain events that occurred during 2006, while plaintiff was confined at the Batavia Federal Detention Facility ("Batavia") in Batavia, New York, pursuant to the Court's pretrial detention order.

       On October 26, 2007, the Court granted Libbett's application to proceed *in forma pauperis*, and directed him to file an amended complaint to correct certain defects in the original complaint. Dkt. #3. Plaintiff filed an amended complaint on December 21, 2007. Dkt. #7.

       On April 10, 2008, the Court issued a Decision and Order (Dkt. #9), pursuant to the Court's obligation under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to screen *in forma pauperis* pleadings, dismissing all of plaintiff's claims except for his Eighth Amendment claims alleging deliberate

indifference to his medical needs and his pain. The Court also dismissed certain defendants from the case, leaving five defendants remaining: Batavia Physician Assistant ("P.A.") Deborah Doody, Dr. Brenda Bailey, Dr. Michael Latunji, Monroe County Jail Administration ("MCJA") Sergeant Lawrence Kloner, and MCJA Major Edward Krenzer.[1]

Those five defendants have now moved to dismiss the complaint.[2] Plaintiff has responded to the motions, and has also filed a motion for leave to file a second amended complaint.[3]

---

[1]Apparently Doody's surname has since changed to Bishop. *See* Dkt. #25 at 1. For the sake of convenience, she will be referred to in this Decision and Order by her name at the time of the events giving rise to this suit, Deborah Doody.

[2]Defendants have all answered the amended complaint. *See* Dkt. #10, #19, #28. Dr. Latunji's motion to dismiss is made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. #37 at 1. The motion by Doody and Bailey is ostensibly made under Rule 12(b)(6). Since they have answered the complaint, however, I construe their motion as a motion for judgment on the pleadings under Rule 12(c). *See Dunnigan v. Metropolitan Life Ins. Co.*, 277 F.3d 223, 227 n.3 (2d Cir. 2002); *Ray v. Klyczek*, No. 08-CV-488, 2009 WL 3199606, at *1 n.1 (W.D.N.Y. Sept. 30, 2009).

Apparently through an oversight, Kloner and Krenzer have not actually filed a separate motion to dismiss or notice of motion to dismiss. They simply filed a memorandum of law and an attorney's affidavit in support of such a motion. *See* Dkt. #39, #40. Plaintiff, however, has directly responded to the arguments made by Kloner and Krenzer, *see* Dkt. #54, and has thus clearly proceeded as if they had made such a motion. Since plaintiff has not been prejudiced by defendants' omission in this regard, then, I will treat Kloner's and Krenzer's memorandum of law (Dkt. #39) as a motion to dismiss.

[3]Plaintiff has also filed a motion (Dkt. #53) to correct typographical errors in some of his previously filed papers. Those errors will have no bearing on the Court's decision with respect to the other pending motions, and accordingly plaintiff's motion is denied as moot.

- 2 -

## BACKGROUND

According to the amended complaint, on the morning of June 26, 2006, Libbett slipped and fell as he was leaving the shower at Batavia, causing pain and injuries to his back, neck and head. Libbett told the officer on duty that he was hurt, and shortly thereafter P.A. Doody arrived and had plaintiff taken on a stretcher to the facility infirmary, where he was seen by Dr. Bailey.

Plaintiff alleges that he told Doody that he was in extreme pain, and that he asked to be sent to an outside facility for treatment. Doody allegedly responded that she and Dr. Bailey "had decided to wait and see how [Libbett] felt in a couple of days ... ." Dkt. #7 ¶ 8.

The next day, Libbett was transferred to the Monroe County Jail ("Jail") in Rochester. Upon admittance, he was seen by a nurse, who allegedly told plaintiff that he "was a priority due to the seriousness of [his] injuries," but that he could not be seen by a doctor for another three days.

In fact, however, Libbett was not seen by a physician until July 13, when he was examined by Dr. Latunji at the Jail. Plaintiff asked to be seen by an orthopedist, but Dr. Latunji allegedly stated that he did not believe that was necessary, adding that Libbett had taken "a nasty fall and was going to be in pain for a while, and to be a man." *Id.* ¶ 34. Dr. Latunji prescribed pain medication for plaintiff.

Plaintiff alleges that he repeatedly informed Dr. Latunji, by means of inmate communication forms, of his continued pain over the following weeks and months. He also alleges that he informed defendant Major Krenzer that he was in pain and that the treatment that he had been given by Dr. Latunji had been ineffective. *Id.* ¶¶ 37-39.

Plaintiff also alleges that Dr. Latunji had him placed in an "isolation cell," although the reason for that is unclear. Plaintiff alleges that Dr. Latunji ordered this "as a form of punishment," *id.* ¶ 38, but the complaint does not explain why Dr. Latunji would have wanted to punish Libbett.

Plaintiff alleges that at some point during his confinement in the isolation cell, defendant Sgt. Kloner came to the cell and told Libbett that his criminal defense attorney had called the Jail and asked that plaintiff be sent for an outside evaluation, because the attorney had seen how much pain Libbett was in when the attorney came to meet with him at the Jail. Sgt. Kloner allegedly told Libbett that he had gone to school with Libbett's lawyer, that they were good friends, and that as a favor to the lawyer, Kloner had agreed to have Libbett taken to Strong Memorial Hospital ("Strong") for a medical consult. *Id.* ¶ 42.

Libbett was taken to Strong in September 2006 for an orthopedic evaluation. After certain tests were performed, Libbett was told by the orthopedic specialist that he would need two months of physical therapy to alleviate his severe muscle spasms, after which the specialist wanted to see him for a follow-up visit. *Id.* ¶¶ 46-47.

Plaintiff alleges that in fact he was taken to only one session of physical therapy in mid-October 2006. He was then moved to a correctional center in Ohio for a little over a month, then sent back to the Jail in early December. On December 11, Libbett was seen by Dr. Latunji, who told plaintiff that he would direct that plaintiff be scheduled to continue his physical therapy. On December 15, however, Libbett was moved back to Batavia, and never received any further therapy or follow-up with the orthopedist at Strong. *Id.* ¶¶ 50-51.

As stated, pursuant to the Court's April 10, 2008 Decision and Order, the only claims in this case at this point are plaintiff's Eighth Amendment claims. Plaintiff alleges that all of the defendants were deliberately indifferent to his physical suffering and his medical needs. He seeks damages against all the defendants, as well an injunctive relief directing that he be allowed to complete the physical therapy that was prescribed for him by the specialist at Strong.[4]

**DISCUSSION**

**I. Dr. Bailey and P.A. Doody**

Plaintiff's claims against the two federal defendants, Bailey and Doody, must be dismissed for several reasons. First, to the extent that plaintiff purports to bring his claims against them under § 1983, those claims must be dismissed, as § 1983 does not provide a remedy against federal defendants. *See Abney v. Jopp*, 655 F.Supp.2d 231, 233 n.2 (W.D.N.Y. 2009) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 506-07 (2d Cir. 1994)).

Ordinarily, the Court would simply treat plaintiff's § 1983 claims against Bailey and Doody as so-called *Bivens* claims, which are analogous to § 1983 claims. *See*, *e.g.*, *Abney*, 655 F.Supp. at 233 n.2. There is a further obstacle to Libbett's claims against Bailey and Doody, however, which is that as employees of the Public Health Service, Bailey and Doody are absolutely immune from suit, pursuant to the Public Health Service Act, 42 U.S.C. § 233(a), which "makes the Federal Tort Claims Act ["FTCA"] the exclusive remedy for specified actions against members of the Public

---

[4]According to the docket sheet, plaintiff is currently incarcerated at a federal correctional institution in California. Thus, his claims for injunctive relief would appear to be moot, regardless of whether he could show that the defendants in this action had violated his constitutional rights while plaintiff was housed at Batavia or the Jail.

Health Service." *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000). *See*, *e.g.*, *Wallace v. Dawson*, 302 Fed.Appx. 52, 54 (2d Cir. 2008); *Anson v. Bailey*, No. 06CV-0394, 2009 WL 414017, at *1 (W.D.N.Y. Feb. 18, 2009).[5]

In addition, the United States Attorney has filed a certification in this case (Dkt. #23) stating that at all times relevant to plaintiff's claims, Bailey and Doody were acting within the scope of their employment with the United States Public Health Service. "The Westfall Act, 28 U.S.C. § 2679, allows a federal employee sued in an individual capacity to convert the action to one against the United States, thereby obtaining indirectly the benefit of the United States' sovereign immunity." *Winters v. Taylor*, 333 Fed.Appx. 113, 116 (7th Cir. 2009). Thus, upon the filing of such a certification, "the tort suit automatically converts to an FTCA 'action against the United States' in federal court; the Government becomes the sole party defendant; and the FTCA's requirements, exceptions, and defenses apply to the suit.'" *Harbury v. Hayden*, 522 F.3d 413, 416 (D.C. 2008) (quoting 28 U.S.C. § 2679(d)(1)).

Section 2675 of Title 28, however, "mandates that an FTCA action 'shall not be instituted upon a claim against the United States for money damages ... unless the claimant shall have first presented the claim to the appropriate Federal agency ... .'" *White-Squire v. U.S. Postal Service*, 592

---

[5]Dr. Bailey and P.A. Doody have submitted declarations, which plaintiff has not rebutted, in which they state that at all times relevant to the events alleged in the complaint, they were employed by the Public Health Service. Dkt. #25, Exs. A, B. The United States Attorney has also filed a certification (Dkt. #23) to that effect.

Because the issue of § 233(a)'s applicability to plaintiff's claims goes to the Court's subject matter jurisdiction over those claims, the Court may consider that certification and defendants' declarations in deciding defendants' motion to dismiss. *See Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999), *cert. denied*, 529 U.S. 1003 (2000); *Anson*, 2009 WL 414017, at *1-*2; *Sudnick v. Department of Defense*, 474 F.Supp.2d 91, 96 (D.D.C. 2007).

F.3d 453, 457 (3d Cir. 2010) (quoting 28 U.S.C. § 2675(a)). It is the plaintiff's burden to show that he has completed all the conditions precedent to bringing a claim under the FTCA. *See McCullough v. United States*, No. 08-413, 2009 WL 367371, at *5 (D.S.C. 2009); *Hill v. United States*, 562 F.Supp.2d 131, 134 (D.D.C. 2008).

Plaintiff in the case at bar has not presented any proof that he has filed an administrative claim under the FTCA. In addition, defendants have presented proof of their own that plaintiff has not done so. *See* Declarations of Scott A. Whitted and Marilyn Blandford, Dkt. #25 Exs. C and D. Plaintiff's claim against these defendants must be dismissed for this reason as well.

Finally, even if those statutory bars did not exist, plaintiff's *Bivens* claim against Bailey and Doody would fail. Such a claim would be subject to the same analysis as a § 1983 Eighth Amendment claim against a state actor alleging deliberate indifference to the plaintiff's serious medical needs. *See Cuoco*, 222 F.3d at 106; *Collazo-Portillo v. D'Avirro*, No. 06CV2028, 2007 WL 1614527, at *2 (D.Conn. May 29, 2007). In the case at bar, it would fail for essentially the same reasons as plaintiff's § 1983 Eighth Amendment claim against the other defendants, which is discussed below.

## II. Dr. Latunji

It appears from the allegations of the complaint, and there is no dispute here, that at all relevant times, Dr. Latunji was an employee of the Monroe County Jail. Plaintiff's claims against

Dr. Latunji, which allege that Latunji did not provide plaintiff with proper medical care, are therefore properly analyzed as claims under the Eighth Amendment to the United States Constitution.[6]

To show that the medical treatment that he received was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, plaintiff must show that defendant's actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995)). *See also Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'") (quoting Chance, 143 F.3d at 702). Among the relevant factors for determining whether a serious medical need exists are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (internal quotation marks omitted).

---

[6]To the extent that the events underlying plaintiff's claim against Dr. Latunji occurred while he was still in pretrial detention, his claims, strictly speaking, arise under the Due Process Clause of the Fourteenth Amendment. In practice, however, that analysis "involves the same test as that used to analyze claims by convicted inmates under the Eighth Amendment." See Mayo v. County of Albany, No. 09-1745-cv, 2009 WL 4854022, at *1 (2d Cir. Dec. 17, 2009) (citing *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)); *accord Caiozzo v. Koreman*, 581 F.3d 63, 71-72 (2d Cir. 2009).

As to the "deliberate indifference" component, the Supreme Court explained in *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991), that this standard includes both an objective and a subjective component. With respect to the objective aspect, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights. With respect to the subjective element, the court must consider whether the deprivation was brought about by defendants in wanton disregard of those rights. *Id.* To establish deliberate indifference, therefore, plaintiff must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain. *See id.* at 299; *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991); *Ross v. Kelly*, 784 F.Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir. 1992).

The Court in *Estelle* also cautioned that mere negligence is not actionable. "A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 102, or "incompatible with the evolving standards of decency that mark the progress of a maturing society," *id.* at 105-06. It is clear, then, that allegations of malpractice alone do not state a constitutional claim. *Id.* at 106 n. 14; *Chance*, 143 F.3d at 703-04; *Ross*, 784 F.Supp. at 44.

Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at

703; *see also Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion").

To survive a motion to dismiss, then, plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," under the standards recited above. *Hayden v. Paterson*, ___ F.3d ___, 2010 WL 308897, at *7 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009)). *See also Burton v. Lynch*, ___ F.Supp.2d ___, 2009 WL 3286020, at *8 (S.D.N.Y. 2009) ("To sufficiently plead a claim of deliberate indifference, Plaintiff must allege facts showing both an objective and a subjective element"); *Williams v. Carbello*, ___ F.Supp.2d ___, 2009 WL 3241563, at *3 (S.D.N.Y. 2009) ("A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Thus, to state a § 1983 claim, Williams must allege that Curbelo knew of and disregarded an excessive risk to his health or safety").

Libbett has failed to meet that standard here. Even accepting the truth of plaintiff's allegations, it is clear that Dr. Latunji (as well as Dr. Bailey and P.A. Doody) did provide him with some treatment, and that they did not act out of any subjective desire to cause plaintiff pain. Plaintiff has alleged that he was dissatisfied with the treatment that he received, that it was not as effective as he would have liked, and that he was not given treatment as quickly as he would have preferred, but none of those allegations make out a valid Eighth Amendment claim. At most, plaintiff has alleged that defendants were negligent in their treatment of his injuries. Again, that is not enough to give rise to a constitutional violation.

Plaintiff's conclusory allegation that Dr. Latunji ordered him to be placed in an "isolation cell" in order to punish him also fails to state a claim. There are no facts alleged indicating that Dr. Latunji (assuming that he was the person responsible for plaintiff's placement in an isolation cell) acted out of any impermissible motive, that plaintiff's health suffered as a result of his confinement to an isolation cell, or that his constitutional rights were violated in any way as a result of that action. In short, plaintiff's factual allegations simply do not render plausible his bald assertion that Dr. Latunji violated his constitutional rights. *See Fransua v. Vadlamudi*, No. 05-1715, 2008 WL 4810066, at *1 (2d Cir. Nov. 3, 2008) ("While Fransua makes several allegations regarding the seriousness of his medical needs and the lack of adequate care given to him by state prison officials and doctors, his complaint does not allege facts upon which a reasonable juror could infer that defendant doctors possessed the subjective reckless state of mind needed to permit a successful Eighth Amendment deliberate indifference claim"); *Williams*, ___ F.Supp.2d ___, 2009 WL 3241563, at *4 ("At most, Williams alleges that Curbelo was merely negligent for 'wanting to wait' to monitor him before sending him to a hospital–a decision that more plausibly shows Curbelo was responsive to Williams's plight and not deliberately indifferent to it"); *Martinez v. Ravikumar*, 616 F.Supp.2d 455, 459 (S.D.N.Y. 2009) ("At most, Martinez alleges that [Dr.] Ravikumar was negligent in his performance of the surgery and subsequent examinations. Such allegations do not give rise to a valid claim of medical mistreatment under the Eighth Amendment").

**III. Sgt. Kloner and Maj. Krenzer**

For many of the same reasons stated with respect to Dr. Latunji, I find that plaintiff has also failed to make out a facially valid claim against defendants Kloner and Krenzer. While plaintiff's Eighth Amendment claims against them are subject to essentially the same standards as his claims against the other defendants, *see*, *e.g.*, *Estelle*, 429 U.S. at 104-05; *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004), if anything plaintiff's allegations against Kloner and Krenzer are even weaker than his allegations against the other defendants.

Plaintiff alleges that Kroner agreed to send plaintiff for an outside medical evaluation because Kroner was a friend of plaintiff's criminal defense counsel. Libbett also alleges that he complained to Krenzer that Dr. Latunji's treatment of plaintiff's injuries was ineffective. None of those allegations indicates that Kloner or Krenzer had any direct involvement in, or responsibility for, plaintiff's medical treatment. Furthermore, since they knew that Libbett was under the care of Dr. Latunji, it would hardly be reasonable to expect them to question his judgment or to credit plaintiff's contention that Dr. Latunji's course of treatment was somehow deficient. Certainly there is nothing to suggest that these defendants acted out of some wanton motive or that they deliberately tried to cause plaintiff to suffer pain or to put his health at risk. There is simply no basis for a claim against Kloner or Krenzer. *See Coles v. Eagle*, No. 09-00167, 2009 WL 2700210, at *7 ( D.Haw. Aug. 27, 2009).

**IV. Plaintiff's Motion for Leave to Amend**

Plaintiff has filed a motion for leave to file a second amended complaint. The proposed second amended complaint would add additional defendants, such as Monroe County Sheriff Patrick

O'Flynn and the "Board of County Commissioners," but far from correcting "all defects" in the first amended complaint, or "eliminating the basis for the defendants [sic] motion to disimiss," as plaintiff suggests, Dkt. #29 at 3, the proposed second amended complaint, if filed, would simply be subject to dismissal for even more reasons that the first amended complaint, which, as the Court has previously stated, "is the operative pleading for this action." Dkt. #9 at 11.[7] Plaintiff's motion for leave to amend is therefore denied as futile. *See Malcolm v. Honeoye Falls-Lima Educ. Ass'n*, ___ F.Supp.2d ___, 2010 WL 104685, at *8 (W.D.N.Y. 2010).

## CONCLUSION

The motions to dismiss filed by defendants Bailey and Doody (Dkt. #25), Latunji (Dkt. #37), and Kloner and Krenzer (Dkt. #39) are granted, and the complaint is dismissed.

Plaintiff's motion for leave to file a second amended complaint (Dkt. #30) is denied. Plaintiff's motion to correct typographical errors (Dkt. #53) is denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      February 23, 2010.

---

[7] The claim against Sheriff O'Flynn, for example, would be subject to dismissal based on O'Flynn's lack of personal involvement in the underlying events.